MR. JUSTICE SHEEHY,
dissenting:
Under this incredible Opinion, it is the decision of the Court that it is better to keep this woman on public assistance and food stamps than to invest the monies to which she is entitled to give her an adequate living income.
Dear reader, look at the background of exploitation and carelessness that we sanction in the Worker’s Compensation system.
On September 21, 1984, R. Gail Hernandez suffered an injury arising out her employment with Acme Press in Missoula County. The Fund, as the insurer, accepted liability for her injury and has paid her weekly disability benefits from April 22, 1985 through the present. In her employment with Acme, she was receiving on-the-job training but in the ten months she worked there, her pay never increased from $5.00 an hour for a 40 hour week. She learned no skill while on the job, her employment having confined her to menial tasks in the printing shop.
Following her injury, her condition gradually deteriorated so that she was unable to continue her work with Acme. She reached maximum healing in the fall of 1986. The Compensation Fund refused to acknowledge that she was permanently totally disabled. She requested a determination of her permanent disability from the *215 Worker’s Compensation Court, as well as a lump sum distribution of a portion of her Worker’s Compensation benefits. On September 22, 1987, a pretrial conference before the Worker’s Compensation Court was held. There the Fund denied that she was permanently totally disabled and denied that it should pay any amount to the appellant in a lump sum. Three days before the trial, however, which took place on November 2, 1987, the Fund finally admitted that her disability was permanent and total.
For the dispute as to her permanent disability, she has received no attorney fees as far as I can determine. Her monthly benefits of $579.00 per month are apparently now reduced by 25% because of her attorney fees to the sum of $434.25 per month. Why the Fund should not bear the attorney fees, I am unable to determine from the record.
At the time of the hearing, Mrs. Hernandez was a 41 year old married female. She is a high school graduate and an honorably discharged veteran who served in the United States Navy. She is married, but her husband lives in Peru, and does not send support on any regular basis. She has four children, ages 20, 18, 7 and 6, all of them live with her in federally-subsidized housing. She is their sole support and also the sole support for her sister-in-law and her sister-in-law’s infant baby.
The children have dental problems, and a daughter is having medical problems involving fainting and stomachaches, but all dental and health care must be postponed because she is unable to provide medical insurance for herself or her children nor can she afford the deductible for Medicaid.
Her oldest son is 20 years old. He is presently attending the University of Montana on a part-time basis and is working part-time. All of the income which he earns goes toward his education and he cannot afford to go to school on a full-time basis. The oldest daughter is 18, and hopes to go either to a trade school or to college but she has no funds with which to pursue her education beyond high school. The position of the Fund is that she ought to go out and borrow the money.
This family’s income places it at 53% of the poverty level established for a family of that size. Janet L. Finn, a licensed social worker testified in detail about the problems that face low income families. Extended poverty leads to feeling of hopelessness and helplessness with little opportunity for future progress because the focus has to be on day-to-day survival. Such families experience a high *216 drop-out rate in high school, are more likely to face educational difficulties in school and are also more likely to suifer from health problems. The apartment in which this family lives is a third floor apartment, with no elevator, in a neighborhood where frequent vandalism occurs.
The Worker’s Compensation Court found that her lifetime benefits entitlement if she lived through her life expectancy is $246,050.99, less $23,651.82 which she has received in the past. Before the Workers’ Compensation Court, she requested a lump sum advance of $170,065.00, of which $123,065.00 would be used to fund a monthly income for her of $1,500.00. There were other proposals for a down-payment on a modest home, a reserve fund, a minimal education fund for the children and protection against inflation. Two expert witnesses testified that the money could be invested and provide such benefits if the request were granted by the court.
Even deducting the amounts objected to by the Fund in this cause, her monthly budget approximates $600.00 per month, which obviously she is unable to meet with the income now provided her from her compensation benefits.
Why did the Workers’ Compensation Court refuse her request which might give her at least an approach to the federal poverty income level? It said:
“The lump sum requested by the claimant not only seeks to ensure her of an income that she enjoyed prior to her injury, but in fact will increase her earnings by 50 percent and double her budget. The proposal of claimant here does not merely seek to allow her to sustain herself financially or return her to her asset situation as prior to her injury, but will completely alter her economic status above that which she was enjoying at the time of her injury.”
If this claimant had not been injured in the course of her employment, if that employment had not given her a degenerative disc condition at several levels, if she had not traded her lifetime working ability for the paltry benefits of the Workers’ Compensation system, the foregoing statement of the Court might be tolerated. Her injury denied her every possibility of ever improving her situation and reduced her to grinding poverty. When she presents a plan that could offer some relief, she is denied because she might improve her income from a menial job and because of the policy of the Court and of the legislature respecting “passive income.”
As I dictate this dissent, three-month treasury bills backed by the United States Government are yielding 8.5% interest per year. Two- *217 year notes are yielding approximately 9% per year. By simply taking $100,000.00 of her entitlements and placing it under supervised investment in government securities, her present income could easily be doubled, and the whole principal saved. In the guise of preserving the “best interests of the claimant”, this Court, hemmed in by prior caselaw that cannot logically be supported is actually adverse to her best interests.
Years ago, when much of the cash of the state was languishing around the country in no-interest bank accounts, it was decided to take advantage of investment of these monies through the Board of Investments. I suggest that § 39-71-2324, in cases such as this, allows funds to be transferred to the Board of Investments, supervised by that Board, and used to produce income from investments which would relieve the payments due from the fund. I see no legal reason why we could not order, in the best interests of this claimant, that the Fund itself invest these monies on behalf of this claimant to provide her a living income.
Things have come to a pretty pass when this Court decides that it is better to keep a person on food stamps and public assistance than to relieve her situation through the proper use of her benefits. There is a hollow echo of Marie Antoinette in this Opinion: Let them eat foodstamps.